UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X

MAX PYZIUR,

                Plaintiff,

     v.

ANDEAVOR LOGISTICS LP, GARY R.
HEMINGER, PAMELA K.M. BEALL,
SIGMUND L. CORNELIUS, RUTH I.
DREESSEN, GREGORY J. GOFF, TIMOTHY
T. GRIFFITH, MICHAEL J. HENNIGAN,
JAMES H. LAMANNA, FRANK M. SEMPLE,
and DONALD C. TEMPLIN,

                Defendants.

------------------------------------ X

Case No. _____

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

      Max Pyziur ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

## NATURE OF THE ACTION

      1.     This action is brought by Plaintiff against Andeavor Logistics LP ("Andeavor" or

the "Partnership") and the members of Andeavor's board of directors (the "Board" or the

"Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange

Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R.

240.14a-9, and Item 1015 of Regulation M-A, 17 C.F.R. 229.1015, in connection with the

proposed merger (the "Proposed Merger") between Andeavor and MPLX LP ("MPLX").[1]

---

[1]     Marathon Petroleum Corporation ("MPC") controls MPLX through its indirect ownership
of 100% of the membership interests of MPLX GP, and it also indirectly owned approximately
64% of the outstanding MPLX Common Units as of May 7, 2019.

2.     On May 7, 2019, the Board caused the Partnership to enter into an agreement and plan of merger (the "Merger Agreement") with the MPLX, pursuant to which, each Andeavor common unit will be converted into the right to receive 1.135 common units representing limited partner interests in MPLX (the "Merger Consideration"). Public holders of Andeavor common units prior to the Proposed Merger will collectively receive MPLX common units representing approximately 9.6% of the outstanding MPLX common units.

3.     On May 29, 2019, the Board authorized the filing of a materially incomplete and misleading preliminary registration statement on form S-4 (the "Registration Statement") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act, that recommends Andeavor unitholders consent to the Proposed Merger.

4.     While Defendants are touting the fairness of the Merger Consideration to the Partnership's unitholders in the Registration Statement, they have failed to disclose material information that is necessary for unitholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Registration Statement incomplete and misleading. Specifically, the Registration Statement contains materially incomplete and misleading information concerning: (i) the financial projections of both entities; (ii) the pro forma financial projections for the combined entity; (iii) the valuation analyses performed by Andeavor's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in support of its fairness opinion; (iv) the background of the Proposed Merger; and (v) Goldman Sachs' conflicts of interest.

5.     It is imperative that the material information omitted from the Registration Statement is disclosed to the Partnership's unitholders prior to consummation of the Proposed Merger, so that they can properly exercise their corporate suffrage rights.

6.      For these reasons as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from consummating the Proposed Merger until the material information discussed below is disclosed to Andeavor unitholders.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331, federal question jurisdiction, as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, Andeavor's common units trade on the New York Stock Exchange, which is headquartered in this District, and Andeavor retained Goldman Sachs, which

is headquartered in this District, as its financial advisor rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10.     Plaintiff is, and has been at all relevant times, the owner of Andeavor common units and held such units since prior to the wrongs complained of herein.  Plaintiff resides in this District.

11.     Defendant Andeavor is a Delaware master limited partnership with its principal executive offices located at 200 East Hardin Street, Findlay, Ohio 45840. The Partnership is a fee-based, full-service, diversified midstream logistics company with integrated assets across the western and mid-continentregions of the United States. Andeavor's common units trades on the NYSE under the symbol "ANDX."

12.     Individual Defendant Gary R. Heminger ("Heminger") is, and has been at all relevant times, a director of Andeavor, Chairman of the Board, and Chief Executive Officer of the Partnership. Heminger is also Chairman of the Board and Chief Executive Officer of MPC, Chairman of the MPLX Board and Chief Executive Officer of MPLX GP.

13.     Individual Defendant Pamela K.M. Beall ("Beall") is, and has been at all relevant times, a director of Andeavor.  Beall is also a Director, Executive Vice President, and Chief Financial Officer of MPLX GP.

14.     Individual Defendant Sigmund L. Cornelius ("Cornelius") is, and has been at all relevant times, a director of Andeavor. Cornelius is also the chairman of the ANDX Conflicts Committee.

15.     Individual Defendant Ruth I. Dreessen ("Dreessen") is, and has been at all relevant times, Lead Director of Andeavor.

4

16.     Individual Defendant Gregory J. Goff ("Goff") is, and has been at all relevant times, a director of Andeavor. Goff is also the Executive Vice Chairman of MPC and the MPC Board and a member of the MPLX Board.

17.     Individual Defendant Timothy T. Griffith ("Griffith") is, and has been at all relevant times, a director of Andeavor. Griffith is also the Senior Vice President and Chief Financial Officer of MPC and a member of the MPLX Board.

18.     Individual Defendant Michael J. Hennigan ("Hennigan") is, and has been at all relevant times, a director of Andeavor. Hennigan is also a Director of MPLX and President of MPLX GP LLC.

19.     Individual Defendant James H. Lamanna ("Lamanna ") is, and has been at all relevant times, a director of Andeavor.

20.     Individual Defendant Frank M. Semple ("Semple ") is, and has been at all relevant times, a director of Andeavor. Semple is also a Director of MPLX.

21.     Individual Defendant Donald C. Templin ("Templin") is, and has been at all relevant times, a director of Andeavor. Templin is also a President of Refining, Marketing and Supply of MPC and a member of the MPLX Board

22.     The parties identified in ¶¶ 11-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.     Background and the Proposed Merger**

23.     Andeavor, formerly Tesoro Logistics LP, incorporated on December 3, 2010, is a full-service logistics company operating in the western and mid-continent regions of the United States. The Partnership operates through three segments: Gathering, Processing, and Terminalling and Transportation. Its Gathering segment consists of crude oil, natural gas, and produced water

gathering systems in the Bakken Region and Rockies Region. Its Processing segment consists of the Vermillion processing complex, the Uinta Basin processing complex, the Blacks Fork processing complex, and the Emigrant Trail processing complex. Its Terminalling and Transportation segment consists of the Northwest Products Pipeline, which includes a regulated common carrier products; a regulated common carrier refined products pipeline system connecting Tesoro Corporation's (Tesoro's) Kenai refinery to Anchorage, Alaska, and crude oil and refined products terminals and storage facilities in the western and midwestern United States; marine terminals in California; a petroleum coke handling and storage facility in Los Angeles; and other pipelines. On October 1, 2018, MPC completed its acquisition of Andeavor in accordance with an Agreement and Plan of Merger, dated as of April 29, 2018, as amended, under which MPC acquired Andeavor. MPC controls ANDX through its indirect ownership of 100% of the membership interests of ANDX GP, and it also indirectly owned approximately 64% of the outstanding ANDX Common Units as of May 7, 2019.

24.     MPLX, incorporated on March 27, 2012, is a diversified master limited partnership formed by MPC to own, operate, develop, and acquire midstream energy infrastructure assets. The company is engaged in the gathering, processing and transportation of natural gas; the gathering, transportation, fractionation, storage and marketing of natural gas liquids (NGLs); and the gathering, transportation and storage of crude oil and refined petroleum products. Its segments are Logistics and Storage (L&S) and Gathering and Processing (G&P). MPLX has multiple transportation and storage services agreements with MPC. It also has long-term relationships with a diverse set of producer customers in various natural gas resource plays, including the Marcellus Shale, Utica Shale, Huron/Berea Shale, Haynesville Shale, Woodford Shale, Granite Wash formation and the Permian Basin. MPC controls MPLX through its indirect ownership of 100% of

the membership interests of MPLX GP, and it also indirectly owned approximately 64% of the outstanding MPLX Common Units as of May 7, 2019.

25.     Each of the general partners for both of Andeavor and MPLX are indirect, wholly owned subsidiaries of Marathon Petroleum Corporation ("MPC"). MPC is a leading, integrated, downstream energy company headquartered in Findlay, Ohio. The company operates the nation's largest refining system with more than 3.0 million barrels per day of crude oil capacity across sixteen refineries. MPC's marketing system includes branded locations across the United States, including Marathon brand retail outlets. Speedway LLC, an MPC subsidiary, owns and operates retail convenience stores across the United States. MPC also owns the general partner and majority limited partner interests in two midstream companies, MPLX LP and Andeavor Logistics LP.

26.     On May 8, 2019, Andeavor and MPLX issued a joint press release to announce the Proposed Merger stating, in relevant part, as follows:

**MPLX LP Announces Agreement to Acquire Andeavor Logistics LP**

•       **MPLX to acquire ANDX in a unit-for-unit transaction at a 1.07x blended exchange ratio representing a 1% premium to market**

•       **Combination immediately accretive to distributable cash flow for public MPLX and ANDX unitholders**

•       **Creates a leading, large-scale, diversified midstream company anchored by fee-based cash flows with an expanded geographic footprint and enhanced long-term growth opportunities**

•       **Near-term focus on capital efficiency and optimization across the portfolio**

FINDLAY, Ohio, May 8, 2019 – Marathon Petroleum Corporation (NYSE: MPC), MPLX LP (NYSE: MPLX), and Andeavor Logistics LP (NYSE: ANDX) today announced that the two midstream companies have entered into a definitive merger agreement whereby MPLX will acquire ANDX in a unit-for-unit transaction at a blended exchange ratio of 1.07x. This represents an equity value of approximately $9 billion and an enterprise value of $14 billion for the acquired entity. The transaction has been unanimously approved by MPLX's and ANDX's respective

Conflicts Committees and both Boards of Directors. Subject to the satisfaction of customary closing conditions and receipt of regulatory approvals, the transaction is expected to close in the second half of 2019.

Under the terms of the merger agreement, ANDX public unitholders will receive 1.135x MPLX common units for each ANDX common unit held, representing a premium of 7.3%, and MPC will receive 1.0328x MPLX common units for each ANDX common unit held, representing a 2.4% discount. The blended exchange ratio of 1.07x represents a 1% premium to market1.

"This transaction simplifies our MLPs into a single listed entity and creates a leading, large-scale, diversified midstream company anchored by fee-based cash flows," said Gary R. Heminger, chairman and chief executive officer. "This transaction is projected to be immediately accretive to MPLX unitholders on distributable cash flow, demonstrating MPC's commitment to positioning its midstream business for long-term success. The combined entity will have an expanded geographic footprint which we believe enhances our long-term growth opportunities and the sustainable cash flow profile of the business. We are confident about the midstream growth and value-creation opportunities that exist across this combined platform in the best basins in the U.S."

Mike Hennigan will remain President of the combined entity and lead all midstream activities.

**Strategic Rationale**

- Enhances prospects for full midstream value-chain capture: This combination enhances commercial opportunities building on MPLX's strong footprint in the Marcellus and deepening the presence in the Permian. MPLX's focus will continue to be providing services with stable, fee-based cash flows, expanding export capabilities, and leveraging existing assets for third-party business.

- Creates opportunities to high-grade and enhance returns on project backlog: The broader footprint enhances the ability to combine commercial efforts and selectively deploy capital towards the highest return projects with strategic importance.

- Improves financial profile: MPLX is committed to self-funding the equity portion of its capital investments and enhancing distribution coverage throughout 2019 and 2020. The company remains committed to maintaining its investment grade credit profile and views its increased size, scale, and diversification of fee-based cash flows as credit enhancing attributes.

**Approvals and Timing**

The transaction has been unanimously approved by MPLX's and ANDX's respective Conflicts Committees and both Boards of Directors. As part of the transaction, ANDX's General Partner and an MPC subsidiary, together representing approximately 64% of ANDX's common units, have entered into a support agreement pursuant to which those entities have agreed to deliver written consents approving the transaction. ANDX expects to maintain its current distribution level through close. The transaction is expected to close in the second half of 2019, subject to customary closing conditions.

27.     The Merger Consideration represents inadequate compensation for Andeavor units. Indeed, at the time of the Merger Agreement, the Merger Consideration represented $36.53 in value: a derisory premium to the ANDX trading price; $10 *less per unit* than the wall street analysts consensus price target of $46; $6 *less per unit* than the *low-end* of the illustrative present values found by Goldman Sachs in their Standalone Discounted Cash Flow Analysis; and $25 *less per unit* than the high-end of the illustrative present values found by Goldman Sachs in their Standalone Discounted Cash Flow Analysis. It is therefore imperative that unitholders receive the material information (discussed in detail below) that Defendants have omitted from the Registration Statement, which is necessary for unitholders to properly exercise their corporate suffrage rights.

**II.     The Registration Statement Is Materially Incomplete and Misleading**

28.     On May 29, 2019, Andeavor filed the Registration Statement with the SEC in connection with the Proposed Merger. The Registration Statement solicits the Partnership's unitholders to consent to the Proposed Merger.  Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Partnership's unitholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is

necessary for the Partnership's unitholders to make an informed decision on the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

The Misleadingly Incomplete Financial Projections

29.     First, the Registration Statement entirely omits the financial projections for the pro forma combined entity (the "Pro Forma Projections"). In connection with rendering their fairness opinion and performing its underlying financial analyses, Goldman Sachs reviewed "certain financial analyses and forecasts for MPLX pro forma for the Merger prepared by the management of MPC and adjusted by the ANDX Conflicts Committee which we refer to in this section as the 'MPLX Pro Forma Forecast.'" Registration Statement at 60. Goldman Sachs then "held discussions with members of the ANDX Conflicts Committee and the managements of ANDX, MPLX and MPC regarding their respective assessment of the strategic rationale for, and the potential benefits of, the Merger and the past and current business operations, financial condition and future prospects of ANDX and MPLX." Id.

30.     Additionally, on pages 58-59 of the Registration Statement, the Board listed the "material" factors and benefits for recommending Andeavor unitholders consent to the Proposed Transaction, including the following:

> The ANDX Public Unitholders would be entitled to the right to receive MPLX Common Units at the Public Unitholder Exchange Ratio, which is an exchange ratio the ANDX Conflicts Committee viewed as fair and reasonable in light of ANDX's recent and projected financial performance, MPLX's recent and projected financial performance, and relative past trading prices of the ANDX Common Units and MPLX Common Units, *as well as the strengths of the surviving entity and benefits to be received by the holders of ANDX Common Units*, including, among others:
>
>> The combined partnership's lower *pro forma* leverage relative to the existing leverage of ANDX, and greater financial flexibility of a less levered entity; and

> The *combined partnership's forecast* higher distribution coverage relative to ANDX standalone, which is expected to provide strengthened distribution stability *and long-term growth prospects*, enhancing funding optionality and reducing reliance on capital markets.

Registration Statement at 58 (emphasis added).

31.     The Pro Forma Projections served as a primary reason for the Board to approve and recommend the Proposed Merger and for Goldman Sachs to find the Merger Consideration "fair" to Andeavor unitholders. The Pro Forma Projections are plainly material and speak squarely to the question that the Partnership's unitholders must answer in determining whether to consent to the Proposed Merger: is a smaller stake in the combined company more or less valuable than a full stake in the standalone company? Without the Pro Forma Projections, Defendants present the Partnership's unitholders with only a fraction of the equation, rendering them unable to answer this question and assess the fairness of the Proposed Merger.

32.     Second, the Registration Statement omits the unlevered free cash flow projections for Andeavor, MPLX, and the pro forma combined entity (the "Unlevered Free Unlevered Free Cash Flow Projections"). It is indisputable that the Unlevered Free Cash Flow Projections were the most important input in Goldman Sachs' Discounted Cash Flow Analyses—the entire analysis is based upon discounting the Unlevered Free Cash Flow Projections to present value.  However, Defendants elected to exclude the Unlevered Free Cash Flow Projections from the Registration Statement, despite the fact that they simultaneously elected to include a purported "summary" of Goldman Sachs' Discounted Cash Flow Analysis and the financial projections for both entities.

33.     Defendants elected to summarize the projections for Andeavor and MPLX in the Registration Statement, but they excised and failed to disclose the most important projections— the Unlevered Free Cash Flow Projections. The omission of the Unlevered Free Cash Flow Projections renders the projection table on page 68-69 of the Registration Statement incomplete

and misleading because without the Unlevered Free Cash Flow Projections the projection summaries provide a misleading overall valuation picture of the Company. This is caused by significant differences between unlevered free cash flow projections—widely recognized as the most important valuation metric when it comes to valuing a company—and the distributable cash flow and EBITDA projections that were included in the Registration Statement.

34.     EBITDA and distributable cash flow projection metrics are not sufficient analogs for unlevered cash flow projections. Well settled principles of corporate finance and valuation dictate that the value of companies should be premised upon the company's projected future unlevered free cash flows.[2] Goldman Sachs agrees, as indicated by their use of the Unlevered Free Cash Flow Projections—not EBITDA or distributable cash flows—in performing their Discounted Cash Flow Analyses, in contrast to the use of distributable cash flows in the *Illustrative Contribution Analysis* and the *Pro Forma Merger Analysis*. As Warren Buffet and other financial experts have stated: "References to EBITDA make us shudder. Too many investors focus on earnings before interest, taxes, depreciation, and amortization.  That makes sense, only if you think capital expenditures are funded by the tooth fairy."[3] EBITDA does not take into account any capital expenditures, working capital requirements, current debt payments, taxes, or other fixed costs that are critical to understand a company's value.[4] As a result of these material differences between unlevered free cash flows and EBITDA and distributable cash flows, experts recognize

---

[2]     Pratt, Shannon. "Net Cash Flow: The Preferred Measure of Return." Cost of Capital. 16. ("Occasionally, we find an analyst treating earnings before interest, taxes, depreciation, and amortization (EBITDA) as if it were free cash flow. This error is not a minor matter…").

[3]     Elizabeth MacDonald, *the Ebitda folly*, FORBES (March 17, 2003), http://www.forbes.com/global/2003/0317/024.html.

[4]     Cody Boyte, *Why EBITDA is Not Cash Flow*, AXIAL FORUM (Nov. 19, 2013), http://www.axial.net/forum/ebitda-cash-flow/

unlevered free cash flows as a much more accurate measure when it comes to analyzing the expected performance of a company.

35.     Therefore, by disclosing the EBITDA and distributable cash flow figures in the Registration Statement and withholding the Unlevered Free Cash Flow Projections, Defendants render the tables of projections on pages 68-69 of the Registration Statement materially incomplete and provide a misleading valuation picture of Andeavor, MPLX, and the combined entity.  Simply put, unlevered free cash flow projections are irreplaceable when it comes to fully, fairly, and properly understanding a company's projections and value.

36.     Unlike poker where a player must conceal his unexposed cards, the object of a registration statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a Registration Statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections relied upon by Goldman Sachs and the Board, but have omitted the Pro Forma Projections and the Unlevered Free Cash Flow Projections. Thus, their omission renders the projections disclosed on pages 68-69 and the summary of Goldman Sachs' Discounted Cash Flow Analyses misleading.

The Misleadingly Incomplete Summary of Goldman Sachs' Fairness Opinion

37.     The Registration Statement describes Goldman Sachs' fairness opinion and the various valuation analyses performed in support of its opinion.  Defendants concede the materiality of this information in citing Goldman Sachs' fairness opinion among "the material factors the

[Andeavor] Board considered" in making its recommendation to Andeavor unitholders. Registration Statement at 59. However, the summary of Goldman Sachs' fairness opinion and analyses provided in the Registration Statement fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, Andeavor's unitholders are unable to fully understand these analyses and, thus, are unable to determine what weight, *if any*, to place on Goldman Sachs' fairness opinion in determining whether to consent to the Proposed Merger. This omitted information, if disclosed, would significantly alter the total mix of information available to Andeavor's unitholders

38.     In summarizing the Discounted Cash Flow Analyses prepared by Goldman Sachs, the Registration Statement fails to disclose the following key information—in addition to the Unlevered Free Cash Flow Projections—used in their analysis: (i) the actual inputs and assumptions underlying the calculation of the Andeavor discount rate range of 6.0% to 7.5% (including the values of the WACC and CAPM components); (ii) the actual inputs and assumptions underlying the calculation of the blended discount rate range of 5.5% to 7.0% (including the values of the WACC and CAPM components); (iii) the actual terminal values calculated for each analysis; (iv) the amount of net debt and preferred equity used to adjust Andeavor's enterprise value; and (v) the amount of net debt and preferred equity used to adjust the pro forma enterprise value.

39.     These key inputs are material to Andeavor unitholders, and their omission renders the summary of the Discounted Cash Flow Analyses incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."   Steven M. Davidoff,

Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" Id. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

40.     Without the above-omitted information and the omitted Unlevered Free Cash Flow Projections, Andeavor unitholders are misled as to the reasonableness or reliability of Goldman Sachs' analyses, and unable to properly assess the fairness of the Proposed Merger. As such, these material omissions render the summary of the Discounted Cash Flow Analyses included in the Registration Statement misleading.

The Misleadingly Incomplete Background of the Proposed Merger

41.     The Registration Statement omits material facts from the *Background of the Merger* section, rendering the summary provided therein misleading. Once a solicitation statement travels down the road of partial disclosure of the history leading up to a merger the duty of disclosure requires Defendants to provide unitholders with an accurate, full, and fair characterization of those historic events.

42.     The Registration Statement discloses the some of the conflicts faced by the Board and relies on the existence of the Conflicts Committee to neutralize those issues. However, the

Registration Statement fails to disclose the identity of the Andeavor Board members who comprise the Conflicts Committee.  Accordingly, Andeavor unitholders are unable to determine whether the Conflicts Committee is actually independent of the debilitating conflicts noted above, or if it is conflicted itself.  Moreover, this information must be expressly disclosed so that Andeavor unitholders may determine if Defendants have violated the terms of the Partnership Agreement. It is therefore unquestionably material information and would significantly alter the total mix of information. The omission of the composition of the Conflicts Committee renders the corresponding statements regarding the Conflicts Committee in the Registration Statement Committees and the *Background of the Merger* section of the Registration Statement misleading.

The Registration Statement Fails to Disclose Goldman Sachs' Conflicts of Interest

43.     The Registration Statement fails to disclose the historical relationship(s) and amount of compensation Goldman Sachs received for its prior investment banking and financial services provided to MPC. Disclosure of "relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the relationship between" a financial advisor and the subject company or its affiliates is required pursuant to 17 C.F.R. § 229.1015(b)(4). Such information is plainly material to Andeavor unitholders. It is imperative for unitholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a Proposed Merger must be carefully considered when assessing how much credence to give its analysis. A reasonable unitholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the transaction to the unitholders, might have. This is especially true when that motivation could rationally lead the advisor to favor a deal

at a less than optimal price, because the procession of a deal was more important to them—given their overall economic interest—than only approving a deal at truly fair price to unitholders.

44.     On page 66 the Registration Statement states in detail the historical relationships between Goldman Sachs and both Andeavor and MPLX. Yet, inexplicably, the Registration Statement fails to disclose the historical relationship between Goldman Sachs and MPC. As the wholly owning parent of the General Partner of the Partnership and the controlling unitholder of Andeavor, MPC is undoubtedly affiliated with MPC. Therefore, the omission of the relationship between Goldman Sachs and MPC renders the statement provided on page 66 of the Registration Statement, and potentially Goldman Sachs' fairness opinion, incomplete and misleading, and in violation of 17 C.F.R. § 229.1015(b)(4).

45.     In sum, the omission the of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the consummation of the Proposed Merger, Plaintiff and other Andeavor unitholders will be unable to make an informed decision and are thus will suffer irreparable harm, warranting the injunctive relief sought herein.

## <u>COUNT I</u>

**On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any Registration Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

48.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications with unitholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

49.     Item 1015 of Regulation M-A requires "[a]ny report, opinion or appraisal relating to the consideration or the fairness of the consideration to be offered to security holders or the fairness of the transaction to the issuer or affiliate or to security holders who are not affiliates" to "[d]escribe any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the relationship between: (i) The outside party, its affiliates, and/or unaffiliated representative; and (ii) The subject company or its affiliates." 17 CFR 229.1015

50.     The omission of information from a Registration Statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

51.     Defendants have issued the Registration Statement with the intention of soliciting unitholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding: (i) the financial projections for both Andeavor and MPLX; (ii) the financial projections for the pro forma combined entity; (iii)

the valuation analyses performed by Goldman Sachs; (iv) the background of the Proposed Merger; and (v) Goldman Sachs' conflicts of interest.

52.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to unitholders although they could have done so without extraordinary effort.

53.     Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger. Indeed, the Registration Statement states that Defendants were privy to and had knowledge of the financial projections and the details surrounding discussions with Goldman Sachs.  Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to review Goldman Sachs' analyses in connection with their receipt of the fairness opinion, question them as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

54.     Each of the Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it—which they were required to do carefully.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement, the preparation and review of strategic alternatives, and the review of financial projections.

55.     Andeavor is also deemed negligent as a result of the Individual Defendants negligence in preparing and reviewing the Registration Statement.

56.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff and other Andeavor unitholders, and will deprive them of their right to informed corporate suffrage if such misrepresentations and omissions are not corrected.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

57.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58.     The Individual Defendants acted as controlling persons of Andeavor within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Andeavor, and participation in and/or awareness of the Andeavor's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Andeavor, including the content and dissemination of the statements that Plaintiff contends are materially incomplete and misleading.

59.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Andeavor, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Merger.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Merger.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

61.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

62.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants' conduct, Plaintiff will be irreparably harmed.

64.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Merger until Defendants disclose the material information identified above that has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


DATED: June 20, 2019                    Respectfully submitted,

                                        */s/ Juan E. Monteverde*
                                          Juan E. Monteverde

                                        **MONTEVERDE & ASSOCIATES PC**
                                        The Empire State Building
                                        350 Fifth Avenue, Suite 4405
                                        New York, NY 10118
                                        Tel.: (212) 971-1341
                                        Fax: (212) 202-7880
                                        Email: jmonteverde@monteverdelaw.com

                                        *Counsel for Plaintiff*